No. 41,045

Betty Ogilvie, *Appellee*, v. Joan T. Mangels, *Appellant*.

(332 P. 2d 581)

Opinion filed December 6, 1958.

*James B. Pearson,* of Mission, argued the cause, and *Bernis G. Terry,* of Mission, was with him on the briefs for the appellant.

*George A. Lowe,* of Olathe, argued the cause, and *H. Charles Parrish,* of Olathe, was with him on the brief for the appellee.

The opinion of the court was delivered by

Jackson, J.: The appellee brought an action in the court below to recover damages for personal injuries alleged to have been suffered due to the careless and negligent driving of an automobile by the appellant. Appellant answered by general denial and further alleged that plaintiff's injuries, if any, had been caused by plaintiffs own negligence. The reply put the case at issue.

A trial to court and jury resulted in a general verdict in favor of the plaintiff in the sum of $10,500. No special questions were submitted to the jury. The trial court overruled the defendant's motion for new trial and also a motion for judgment notwithstanding the verdict. Defendant has appealed to this court.

We shall continue to refer to the parties as plaintiff and defendant.

The accident which gave rise to this action occurred at the in-

tersection of Santa Fe Drive and 76th street in Overland Park, Johnson County. Santa Fe Drive is a north and south street and 76th street runs east and west. The streets intersect at approximately right angles. It is established that there were no stop signs at the intersection, and further that on the northeast corner of the intersection a high hedge ran from the east line of Santa Fe along 76th street quite effectively obscuring the north view of cars approaching the intersection on 76th street. Likewise, drivers approaching from the north on Santa Fe could not see automobiles approaching from the east on 76th street.

From the testimony of the two drivers the accident involved in this appeal happened as follows:

Plaintiff was driving a Studebaker automobile west on 76th street approaching Santa Fe Drive at approximately 4:15 p. m. on May 28, 1955. She was unfamiliar with the intersection, but finding that she could not see cars approaching from the north on Santa Fe, stopped and eased out trying to see up the street to the north. Her car had a standard transmission and she had placed the car in low and proceeded at a speed of three or four miles per hour. She did not see defendant's car until her car was entering the northwest quadrant of the intersection when defendant drove her car in front of plaintiff's car and the accident occurred. Defendant's car was struck on the left side and skidded more than one hundred feet after the accident. Defendant contends she was knocked to one side by the force of the impact and lost control of her car, and that the skid marks showed the defendant's car was skidding sideways. Plaintiff's car seems to have stopped at the point of collision.

Defendant testified that she was driving a Mercury automobile and approached the intersection from the north on Santa Fe at a speed which she judged to be twenty-five miles per hour; that she knew of the hedge on the corner and that it was a bad corner to see around, and that she "couldn't see around it." That she slowed her car as she approached the corner at a point "fifty or maybe sixty or maybe seventy feet" from the corner; she looked both ways and resumed her speed, judged to be twenty-five miles per hour, as she entered the intersection; at no time before the collision did she see the plaintiff.

The above account of the testimony of the parties is somewhat superfluous in this appeal since the state of the record actually prevents this court from considering the question of whether the learned

trial court was justified in approving the verdict of the jury and entering judgment for the plaintiff thereon. We do not intend to imply that we have doubt about the trial court's action, however.

It should be noted first, that the defendant has not specified as error the overruling of her motion for new trial, and in her brief at no time seeks a new trial. Of course, this sharply limits our power to review the case.

In *Lake Superior Lbr. Co. v. Homestead B. & L. Ass'n*, 139 Kan. 565, 32 P. 2d 202, the syllabus reads as follows:

"Where no motion for a new trial is filed, review on appeal is limited to the question whether the judgment is supported by the pleadings and findings of fact, and inquiry will not be made as to whether the evidence supports the findings of fact."

Since the order on the motion for new trial was not specified as error in the case at bar, it reaches this court as if no motion had been filed, since we cannot consider that motion. (See plethora of cases cited Hatcher's Kan. Dig., Appeal & Error, §§ 175, 181; West Kan. Dig., Appeal & Error, § 719 [10].)

Actually, defendant only specified three errors on this appeal: (1) the overruling of the demurrer to plaintiff's evidence; (2) the order allowing a slight amendment of plaintiff's petition during the trial; and (3) the overruling of a motion for judgment notwithstanding the verdict.

The second assignment of error was a trial error, if any was committed, and is unavailable in the absence of a review of the motion for new trial, see authorities cited *supra*.

As to the third assignment of error, defendant misconceives the office and purpose of a motion for judgment notwithstanding the verdict. In G. S. 1949, 60-3119, our civil code defines such a motion as follows:

"Where, upon the statement in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, though a verdict has been found against such party."

In G. S. 1949, 60-2918, the general verdict and special findings are defined and provided for, and the section closes with the sentence:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

The last provision of our code has given rise to the most common use of the motion for judgment notwithstanding the verdict in our

practice. It is a quite proper motion to direct the trial court's attention to the right of a litigant to judgment based upon the special findings of the jury notwithstanding an adverse general verdict. There are hundreds of our cases in the books raising this question.

In other words, the motion for judgment notwithstanding the verdict in our own practice performs only the same office which that motion performed at common law. It reaches only the written record of the case, that is, the pleadings and verdict. As to the practice at common law, please see Scott and Simpson, Cases and Materials on Civil Procedure, p. 770. We have found none of our cases in which a disputed question of fact was considered under such a motion. Attention is directed to the cases of *Grigsby v. Jenkins*, 183 Kan. 594, 331 P. 2d 284, where Mr. Justice Wertz, speaking for the court, discussed a similar question, and *Lord v. Hercules Powder Co.*, 161 Kan. 268, 167 P. 2d 299, in which the opinion of the court was written by Mr. Justice Wedell, the sixth paragraph of the syllabus reads as follows:

"Where a trial court is dissatisfied with a general verdict and probably with some of the special findings, the correctness of which is not challenged, it may not upon its independent consideration of the whole record, including the weighing of evidence, substitute its judgment for that of the jury, set aside the general verdict and the special findings, and render a judgment in favor of the other party. Under such circumstances the extent of its power is to grant a new trial."

Defendant strenuously contends under her first assignment of error—the demurrer to plaintiff's evidence—that the court should have withdrawn the case from the jury and given judgment in defendant's favor. Defendant filed no motion for a directed verdict following the introduction of her own evidence and the closing of the case. She takes note of the recent case of *Ziegelasch v. Durr*, 183 Kan. 233, 326 P. 2d 295, in which this court in an unanimous opinion held that if defendant wished to insist on a demurrer to the plaintiff's evidence after the same had been overruled and after defendant had introduced evidence, a motion for directed verdict must be filed to direct the trial court's attention to the issue of law.

The defendant likewise agrees, as noted in the Durr case, that this court has always held that if defendant introduces evidence after an order overruling his demurrer to plaintiff's evidence, the question of whether the case should have been withdrawn from the jury depends not upon the state of the plaintiff's evidence at the time the defendant's demurrer was lodged against it, but on

the state of the evidence at the close of the case (see authorities cited in the Durr opinion). To say that the trial court can be reversed for submitting the case to the jury when no motion for a directed verdict has been interposed would be to contend for a violation of the fundamental rule of appellate procedure that the supreme court will not pass upon a question which was not submitted to the trial court.

Defendant suggests that her motion for new trial was sufficient to draw the trial court's attention to the issue raised by the demurrer to the evidence. The contention would seem entirely untenable.

Defendant relies heavily upon the case of *Ray v. Allen*, 159 Kan. 167, 152 P. 2d 851, which involved an automobile collision at an intersection of streets in Wichita. Not only were the facts considerably different in that case, but there the trial court reserved its ruling upon defendant's demurrer to plaintiff's evidence not only until all of the evidence in the case was in, but until after verdict. None of the rules of proper procedure were therein violated, and this court quite rightfully affirmed the trial court's sustaining of the demurrer (or motion for directed verdict).

Perhaps it might be noted that the demurrer to the evidence in this state as defined by G. S. 1949, 60-2909, *Third,* is not a demurrer to the evidence as that term was formally known to the common law. After a real demurrer to the evidence, the defendant was obliged to stand on his demurrer. If the demurrer was sustained, judgment was then rendered for defendant. If the demurrer was overruled, judgment was entered for the plaintiff. Like most civil codes, our code has abolished the old practice pertaining to demurrer to the evidence, although the name is retained. Our demurrer to the evidence is in fact a motion for a directed verdict, which could always be entered either at the end of opponent's case, or at the close of the entire case, or on both occasions.

In Scott and Simpson, Cases and Materials on Civil Procedure, p. 618, the authors remark:

"In a few jurisdictions the demurrer to evidence is retained in name, but in substance it is essentially like a motion for a directed verdict."

If defendant's demurrer to the evidence were here for review, it would seem that defendant's own evidence might be considered to have strengthened plaintiff's case both on the issue of defendant's

negligence and upon the issue of due care by the plaintiff. However, in order to preserve the point for review, the objection to the case being submitted to the jury must have been renewed at the close of all of the evidence, *Ziegelasch v. Durr,* supra. In fact, any appeal to this court would seem to be from the order on the motion for a directed verdict.

In the fifth section of the Bill of Rights of the state constitution, it is said: "The right of trial by jury shall be inviolate."

Such a jury trial presupposes the power of a trial judge to withdraw a case from the jury upon a point of law under proper procedure. (*Diederich v. American News Co.,* [10th CCA] 128 F. 2d 144.)

However, a failure to properly preserve objections may prevent the entry of judgment contrary to the verdict of a jury even where a valid ground once existed. (See *Slocum v. New York Life Ins. Co.,* 228 U. S. 364, 33 S. Ct. 523, 57 L. ed. 879; and see Rule 50 of the Federal Rules of Civil Procedure.) The same general rules protect the trial by jury as preserved by the state constitution in the state courts as surround the trial under the United States Constitution in the federal courts.

The rule of the case of *Ziegelasch v. Durr,* supra, is not only indicated by the former decisions of this court, but almost universally followed in other jurisdictions. A few additional cases are as follows: *McDonough v. United States,* (8 CCA) 248 F. 2d 725; *O'Malley v. Cover,* (8 CCA) 221 F. 2d 156; *6551 Collins Avenue Corp. v. Millen,* (Fla.) 97 So. 2d 490; *McCoy v. Scarborough,* 73 Ga. App. 519, 37 S. E. 2d 221; *Spikings v. Ellis,* 290 Ill. App. 585, 8 N. E. 2d 962; *Love v. Harris et al.,* 127 Ind. App. 505, 143 N. E. 2d 450; *Olson v. Barnick,* 245 Iowa 217, 61 N. W. 2d 733; *Smith v. Pine,* 234 Iowa 256, 12 N. W. 2d 236; *Caple v. Amoss,* 181 Md. 56, 28 A. 2d 566; *Bondanza v. Matteucci,* 59 N. M. 354, 284 P. 2d 1024; *Apodaca v. Allison & Haney,* 57 N. M. 315, 258 P. 2d 711; *Wynne v. Allen,* 245 N. C. 421, 96 S. E. 2d 422; *A. Macaluso Fruit Co. v. Commercial Motor Freight,* (Ohio) 57 N. E. 2d 692; *Friedman v. Hill,* (Okla.) 325 P. 2d 434; *Pikeville Fuel Co. et al., v. Marsh,* 34 Tenn. App. 82, 232 S. W. 2d 789; *Parrow v. Proulx,* 111 Vt. 274, 15 A. 2d 835; *Daniels v. Morris,* 199 Va. 205, 215, 98 S. E. 2d 694; and *Lester A. York v. John P. James,* 60 Wyo. 222, 148 P. 2d 596.

The judgment of the trial court is hereby affirmed.

PRICE, J., concurs in the result.